IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 2, 2008

## JORDAN HILL v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-02028 and 03-00007     Chris Craft, Judge**

---

**No. W2007-02662-CCA-R3-PC   -   Filed August 11, 2009**

---

After a trial by jury, the Petitioner, Jordan Hill, was convicted of criminal attempt: aggravated robbery and convicted felon in possession of a handgun by a Shelby County jury. He now appeals the denial of post-conviction relief claiming "[t]he post-conviction court erred when it denied the Appellant's Petition for Post-Conviction Relief and effectively placed its imprimatur on trial counsel's performance as effective although the proof irrefutably showed that trial counsel had not meaningfully conferred with the Defendant prior to trial[.]" Upon our review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Gerald Stanley Green, Memphis, Tennessee, for the petitioner-appellant, Jordan Hill.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William L. Gibbons, District Attorney General; and Nicole Germain, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

**Facts**. The facts of the underlying convictions, as outlined by a panel of this Court in the petitioner's direct appeal, are as follows:

> Terry Thomas testified that, on March 23, 2002, at 8:00 or 8:30 a.m. he was at a store called Lou's market. He said that he used the phone, and, as he was returning from using the phone, he heard someone calling him by his nickname, "Red." He said that he looked around, and the he saw the Defendant "run up on him." Thomas testified that the Defendant then pulled out a gun and said, "B* * * *, give me your money" while sticking his hand in Thomas' pocket. Thomas "snatched" the Defendant's hand out of his pocket and opened the door to his car. As he was getting in the car, the Defendant hit him on the bridge of his nose with the gun, breaking his nose. Thomas

described the gun as silver and gray and said the gun was "two-toned." He guessed that the gun was an automatic that was either a nine millimeter of forty caliber Glock. Thomas said that the Defendant never got his wallet.

Thomas said that, after the Defendant hit him in he nose with his gun, the Defendant ran and jumped into another car that was a small light brown or gray four-door sedan, like a Chevy Malibu or a Taurus. Thomas said that a woman, Annie Smith, was in his car when he jumped in, and she spotted the police a short distance away. He said that they went to the police and reported what had happened, and the police called an ambulance and treated his nose. Thomas said that he followed the police when they attempted to find the Defendant, and Smith spotted the Defendant standing near his car on a side street. He said that he caught up with the police and told them that he had spotted the Defendant, and they went back to where the Defendant had [been] seen. By the time they got there, the Defendant had gotten back inside his car, and he was sitting in the passenger's seat. Thomas said that the officers then arrested the Defendant and looked under his front seat. They found a gun, and Thomas recognized the gun as the same one that was pointed at him earlier.

On cross-examination, Thomas testified that he parked slanted from the phone when he parked to make a phone call at Lou's market that morning. He said that the person that called his nickname looked like they were across the street, and he turned around. He said that he had never seen he Defendant before, but he waited for him thinking that the Defendant knew him. Thomas was beginning to get back into his car when the Defendant got within one or two feet of him, and the Defendant asked for Thomas' money. Thomas admitted that, in the statement he gave to police on the morning of this incident, he told them that the Defendant approached him before he used the phone, grabbed him and said, "B* * * *, com[e] here," and then hit him with a pistol and attempted to take his wallet. Thomas admitted that he had previously pled guilty to theft of property valued under $500 on April 4, 1997, and he also previously pled guilty to the charge of robbery on January 21, 1994.

On redirect examination, Thomas said that the Defendant was wearing black pants, a gray shirt, and white tennis shoes on the day of this incident. He said that he identified a photograph of the Defendant for police.

Tom Warrick, an officer with the Memphis Police Department, testified that, on March 23, 2002, he was working when he got flagged down at around 8:30 a.m. by the victim of a robbery. He said that the victim, Thomas, told him that he had been robbed, gave him a description of the vehicle and individual involved, and pointed him out from across the street. Officer Warrick said that he and his partner took the Defendant into custody and patted him down. The officer said that the Defendant was sitting in the passenger's seat, and the officer looked in the glove box, which was near where the Defendant was sitting, for a gun. He said that he found a loaded Ruger, automatic, nine millimeter gun in the glove box that was black and silver.

Officer Warrick said that Thomas was bleeding pretty profusely from his nose, and his nose looked like it had been broken.

On cross-examination, the officer said that there was no one else in the car with the Defendant when he was arrested. He said that the Defendant was sitting in the passenger seat of his car, which was parked in a parking lot across the street [from] Lou's market. The officer said that, when he took the Defendant into custody, the officer and his partner were the only other people present. Officer Warrick said that he did not call for an ambulance between the time the victim flagged him down and when he apprehended the Defendant.

Kimberly Tanzy, a criminal court clerk, testified that, in 1996, the Defendant pled guilty to the unlawful possession of a controlled substance with the intent to sell or deliver it, which is a felony.

State v. Jordan Hill, No. W2005-00248-CCA-R3-CD, 2005 WL 3447705 at *1-2 (Tenn. Crim. App., at Jackson, Dec. 16, 2005).

The jury convicted the petitioner of being a felon in possession of a handgun and aggravated robbery. He was sentenced to ten and four years' respectively as a Range III Persistent Offender to be served consecutively, for an effective sentence of fourteen years. The petitioner's direct appeal was affirmed by this court in State v. Jordan Hill, No. W2005-00248-CCA-R3-CD, 2005 WL 3447705 at *1-2 (Tenn. Crim. App., at Jackson, Dec. 16, 2005). On February 9, 2006, the petitioner filed a pro se post-conviction petition, counsel was later appointed, and an amended petition was filed January 31, 2007. A hearing was held on May 30, 2007, and the post-conviction court denied the petitioner relief finding that he had failed to meet his burden of proof. After the thirty day period for filing an appeal had expired, the trial court discovered that its findings of facts and its written order, which the court had mailed to the petitioner, were returned unopened. The trial court then entered an order supplementing the record and appointed new counsel requesting that counsel file a notice of appeal and a motion to file a delayed appeal in the Court of Criminal Appeals.

The petitioner now appeals arguing that "the post-conviction court erred when it denied the [a]ppellant's [p]etition for [p]ost-[c]onviction [r]elief and effectively placed its imprimatur on trial counsel's performance as effective although the proof irrefutably showed that trial counsel had not meaningfully conferred with the defendant prior to trial." Additionally, the petitioner alleges that trial counsel did not sufficiently prepare for trail. The State argues that the post-conviction court properly denied relief in this case. Upon our review of the record, we agree with the State.

**Post-Conviction Hearing**. At the post-conviction hearing, counsel testified that she met and spoke with the petitioner in April 2003. During the meeting, counsel gave the petitioner a copy of his discovery and discussed the case. She told the petitioner that the State offered to settle the case but the petitioner declined it. Counsel further testified that the petitioner never provided her with the names and addresses of any witnesses. She set up an office appointment with the petitioner for May 7th but he never appeared. Counsel further stated that when the petitioner missed his

appointment, she sent a letter to the address the petitioner had provided her asking him to contact her, but the letter was returned a week later stating that the petitioner did not live at that address.

Counsel testified that the petitioner called and left her a message on May 12th. She returned his call the next day and left a message. She stated that the petitioner never returned her call. Counsel further testified that when she attempted to contact the petitioner on May 14th at the phone number he provided, a man answered the phone and told her that he did not know the petitioner and that the petitioner did not live at that number. Counsel additionally testified that she tried to contact the petitioner six more times before the petitioner's trial date, but there was either no answer, the line was disconnected, or the person who answered the phone indicated that the petitioner was not at that number and they did not know him.

Counsel explained that she did not hear from the petitioner again until his trial date in December of 2003. She stated that at this point the petitioner told her that he did not have any witnesses. She informed the petitioner that she had been unable to reach him at the number and address he had provided to her and asked the petitioner again for his address and phone number. The petitioner gave her the same number and address as he had previously provided. She testified that she attempted to contact the petitioner by phone and by mail several times in April of 2004, but there was no answer. Counsel's mail was again returned indicating that the petitioner did not live at that address. Counsel did not speak to the petitioner again until his next trial date of May 12, 2004. She testified that she asked him about his phone number and address again and he insisted what he had given her was accurate. Counsel testified that she attempted to contact the petitioner a third time in May 2004, but could not reach him by phone or by mail.

Counsel stated that she had an investigator try to speak with the alleged victim and that she had conducted a background investigation on him. She went to the store and discovered that there were no surveillance tapes available. Counsel testified that she was unable to discuss trial strategy with the petitioner because he would not contact her. Counsel proceeded to trial with a "drug deal gone bad" theory expecting the petitioner to testify, but the petitioner decided not to testify at the last minute. She further stated that she was unable to argue this theory at trial due to a lack of evidence. However, she attempted to attack the victim's character for truthfulness regarding why he was in the parking lot. She also attempted to show that the victim was attempting to buy drugs to support her "drug deal gone bad" theory.

Counsel testified that she reviewed her trial notes and notes from all of her interviews to find any irregularities she could point out to the judge in preparation for sentencing. She did not object to the validity of the Tennessee sentencing reform act because "the enhancement factors that the State used were either not ones that would be applicable under Blakely or []were ones that were embraced by the verdict." She testified that at the hearing she did object to the application of the use of a deadly weapon as an enhancement factor for the conviction of aggravated robbery because it was an element of the felon in possession of a firearm charge.

On direct examination, the petitioner testified that he did not recall ever discussing the discovery of his case with counsel. He also stated that he did not have any discussions with counsel about any particular strategy and that he did not speak with counsel except when she asked him to

-4-

"cop to the seven years" that the State had offered him, and "stomping off when [he] said no. . . ." The petitioner further testified to only meeting counsel twice, that she never asked him for any witness information, that he had the same phone number for the past ten years, and that counsel never asked him for his phone number. The petitioner testified that counsel told him that she did not want him to testify and that he based his decision not to testify on her recommendation. Finally, the petitioner said that counsel did not confer with him during trial; however, she discussed with him that it would probably hurt him to testify.

The petitioner testified that he believed counsel had not looked at his case before going to trial. Additionally, he said that he did not feel that counsel was adequately prepared for his sentencing. He testified that she did not speak with him about any mitigating factors, his background or his social history. Finally, the petitioner testified that counsel did not appear to be prepared on the day of his trial and that he felt he was not provided adequate counsel, but if he had, the outcome of his trial would have been different.

On cross examination, the petitioner testified that when he was in the court room, counsel never spoke to him and sat silently next to him. He said that his decision not to testify was voluntary, but he based his decision on the advise of his counsel. The petitioner also testified that he was always at home and not working at the time of his trial. He stated had counsel called he would have answered the phone. On redirect, the petitioner again testified that he never gave counsel his number. He further testified that he called counsel "maybe four times" but that he "got a secretary every time" and that she did not ever return his calls.

**Standard of Review**. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). Our Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotations and citations omitted). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Id.; see also T.C.A. § 40-30-110(f) (2006). Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C.Toof & Co., 833 S.W.2d 896, 901, n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal citations and quotation omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984) and Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim[, and] a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below an objective standard of "reasonableness under prevailing professional norms." Id. at 369 (quoting Strickland, 466 U.S. at 688). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 370. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068).

**I. Ineffective Assistance of Counsel.** In his brief, the petitioner argues that "[t]here is no evidence of acceptable, passable or tolerable preparation in this case." In response, the State contends that "the trial court's order dismissing the petition accredited trial counsel's testimony that she did everything she possibl[y] could to represent the petitioner after her appointment." We agree with the State.

At the post-conviction hearing, counsel testified, based on the notes in her file, regarding her efforts to contact and represent the petitioner. She testified that she initially met with the petitioner, provided him with discovery, and discussed the case. She further explained that she was unable to contact the petitioner at the address and phone number that he provided to her on numerous occasions. Despite her unsuccessful attempts to contact the petitioner, she investigated the case. Her investigator attempted to interview the victim even though the victim refused to cooperate. The petitioner testified and disagreed with everything stated by counsel. He specifically denied that counsel met with him outside of court, provided him with discovery, or substantively discussed the case with him. He further denied that counsel requested that he provide her with the names of any witnesses. He also could not remember any of counsel's attempts to contact him and could only recall counsel "getting mad at [him] for not copping – taking the plea." Finally, the petitioner testified that he did not feel that counsel was adequately prepared for sentencing. In a detailed order denying post-conviction relief, the trial court outlined each of the petitioner's issues and found counsel's testimony "was very

credible" and the petitioner's testimony "highly incredible." The post-conviction court also found that (1) counsel properly prepared for trial; (2) no other proof was offered to show that counsel could have developed any other investigation that would have made a difference in the outcome at trial; and (3) that counsel was properly prepared at sentencing because the petitioner received the minimum sentence within his offender classification and sentencing range. We have reviewed the record and conclude that the evidence does not preponderate against the findings of the post-conviction court. Accordingly, the petitioner is not entitled to relief because he has failed to demonstrate that counsel's performance was deficient or any prejudice as a result.

## CONCLUSION

Based on the review of the record and the briefs submitted by the parties, we conclude that the denial of post-conviction relief was proper in this case.

_____
CAMILLE R. McMULLEN, JUDGE